**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL MIKAIL,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:15-2437** |
| | : | **(JUDGE MANNION)** |
| **v.** | : | |
| **PAM MANAGEMENT, INC. and DRUMS FUEL STOP, INC.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the court is the motion for summary judgment of plaintiff Samuel Mikail, (Doc. 38), pursuant to Fed.R.Civ.P. 56, with respect to his breach of contract claims raised in his complaint, (Doc. 1), against defendants PAM Management, Inc. ("PAM"), (Count I), and Drums Fuel Stop, Inc. ("Drums"), (Count II). Plaintiff seeks judgment in his favor and against PAM on his breach of contract claim in Count I in the principal amount of $1,300,000. Regarding the breach of contract claim in Count II, plaintiff seeks judgment in his favor and against Drums in the principal amount of $325,000. Plaintiff contends that he is entitled to summary judgment since the undisputed evidence shows that defendants failed to make the required payments owed under the contracts to his assignor for the sale of her stock shares in defendant truck stops and, since there is no clear and convincing evidence that the parties agreed to oral modifications of the written contracts postponing the payments which were due. Based upon the court's review of the motion and related materials, plaintiff's motion for summary judgment will

be **GRANTED** since there are no disputed material facts that the written contracts were breached and since the evidence is not sufficient to prove that the contracts were orally modified to allow for annual postponements of the monies due under them.

## I.   PROCEDURAL BACKGROUND

Plaintiff is an adult individual residing in London, United Kingdom. Defendant PAM is a Pennsylvania corporation with an address of Hickory Run Travel Plaza, Interstate 80, Exit 274, White Haven, PA 18661. Defendant Drums is a Pennsylvania corporation with an address of Hickory Run Travel Plaza, Interstate 80, Exit 274, White Haven, PA 18661. PAM and Drums basically operate as a truck stop. Plaintiff filed this action on December 18, 2015, (Doc. 1), regarding the assignment to him of two promissory notes and two stock purchase agreements involving PAM and Drums to satisfy debts owed to him. On February 2, 2016, defendants jointly filed a motion to dismiss the complaint under Rules 12(b)(7) and 19 for failure to join necessary and indispensable parties. (Doc. 16). After defendants' motion was briefed and exhibits were submitted, the court issued a memorandum and order on August 23, 2016 denying the motion to dismiss. (Doc. 33, Doc. 34). On August 30, 2016, defendants filed their answer to the complaint with affirmative defenses. (Doc. 37).

Following discovery, plaintiff filed a motion for summary judgment on November 15, 2016. (Doc. 38). Plaintiff also simultaneously filed his

statement of material facts with exhibits and his brief in support of his motion. (Doc. 39, Doc. 40). On December 6, 2015, defendants filed their response to plaintiff's statement of material facts and additional material facts along with exhibits and their brief in opposition of his motion. (Doc. 41, Doc. 42). On December 20, 2016, plaintiff filed his reply brief in support of his motion for summary judgment with additional exhibits. (Doc. 43).

This court has diversity jurisdiction over this case under 28 U.S.C. §1332.

## II. MATERIAL FACTS[1]

### A. PAM Contract

On January 1, 2009, PAM, through its president, Darshan K. Grewal ("Darshan"), executed a stock purchase agreement (the "PAM Agreement") and promissory note (the "PAM Note") with Kathleen S. Shukla ("Shukla"). Manjit Shukla was the original owner of the PAM stocks and his wife Kathleen Shukla acquired his shares of stock when he died. The PAM Note and PAM Agreement are collectively referred to as the "PAM Contract." PAM's attorneys drafted the PAM Contract and PAM was represented by its

---

[1]The material facts are derived from plaintiff's statement of material facts, from defendants' responses thereto with additional material facts as well as the exhibits submitted by the parties. The court has omitted any legal conclusions from the material facts.

For purposes of plaintiff's summary judgment motion, the court views the facts in the light most favorable to defendants. *See* Hampden Real Estate, Inc. v. Metropolitan Management Group, Inc., 142 Fed.Appx. 600, 602 (3d Cir. 2005).

attorneys regarding the execution of this contract. The parties agree that the PAM Contract is governed by Pennsylvania law.

The PAM Contract provided that in exchange for Shukla's shares of stock in PAM, Shukla was to receive five annual interest-only payments at a 6% per year rate, and one principal payment in the amount of $1,000,000 due on February 20, 2014.[2] (Doc. 22-1, Doc. 22-2). The PAM Note also provided that as security for PAM's obligations to Shukla, PAM's counsel would hold her PAM stock shares in escrow until she was paid in full by PAM. Further, the PAM Note stated that if PAM did not pay Shukla in full, PAM's counsel "shall" deliver her stock shares back to her. Shukla then delivered her shares of stock to PAM's counsel to be held in escrow.

The first annual interest-only payment of $60,000 was to be made on February 20, 2010, and that all subsequent interest-only payments for $60,000 were to be made on the first day of February thereafter, for a total of $300,000 in interest over the life of the PAM Contract. The total amount due to Shukla for her shares of PAM stock under the contract was $1,300,000 due

---

[2]In plaintiff's complaint, it is alleged that the parties had orally agreed to amend the PAM and Drums Contracts so that an interest rate of 6% per annum would accrue on the outstanding principal balance even though no such provision was contained in the Contracts. Regardless, since the Contracts did not specify the interest rate, Pennsylvania law provides that the statutory rate of 6% applied. *See* Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 591 (Pa.Super.Ct. 2003)("[T]he statutory rate of interest in the Commonwealth is fixed at 6% ... .)*; see also* 41 Pa.C.S.A. §202 ("Reference in any law or document enacted or executed heretofore or hereafter to 'legal rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.").

4

by February 20, 2014. While denying that any payments are due, defendants indicate that since plaintiff's complaint was filed on December 18, 2015, the payments which plaintiff alleges were due in February of 2010 and February of 2011 under the PAM Contract are barred by the 4-year statute of limitations applicable to contract actions under Pennsylvania law.

It is undisputed that defendants have not made any payments to either Shukla or plaintiff under the PAM Contract. Defendants have offered to return the PAM stock shares to Shukla but she has refused to accept them. Defendants also state that after the PAM Contract was executed, the parties verbally modified the contract "so that any and all interest payments under the [PAM Contract] would be postponed until such time as PAM had sufficient cash flow from the business operations to make interest payments." Additionally, defendants contend that their evidence shows Shukla orally agreed, through Rattan, if she had not been paid from the cash flow of the PAM business pursuant to the contract, she would be paid from the sale proceeds if the business was sold. (Doc. 41, ¶'s 7, 9, Doc. 39-2).

The parties agree that there have been no written modifications or amendments to the PAM Contract. The parties dispute whether the PAM Contract was verbally modified subsequent to its execution.

### B.    Drums Contract

On January 1, 2009, Drums, through its president, Darshan, executed a stock purchase agreement (the "Drums Agreement") and promissory note (the "Drums Note") with Shukla. Manjit Shukla was the original owner of the

Drums stocks and his wife Kathleen Shukla acquired his shares of stock when he died. The Drums Note and Drums Agreement are collectively referred to as the "Drums Contract." Drums' attorneys drafted the Drums Contract and Drums was represented by its attorneys regarding the execution of this contract. The parties agree that the Drums Contract is governed by Pennsylvania law.

The Drums Contract provided that in exchange for Shukla's shares of stock in Drums, Shukla was to receive five annual interest-only payments at a rate of 6% per year, and one payment of principal on February 20, 2014, in the amount of $250,000. (Doc. 22-3, Doc. 22-4). The Drums Note also provided that as security for Drums' obligations to Shukla, Drums' counsel would hold her Drums stock shares in escrow until she was paid in full by Drums. Further, the Drums Note stated that if Drums did not pay Shukla in full, Drums' counsel "shall" deliver her stock shares back to her.

Shukla then delivered her shares of Drums stock to defendants pursuant to the Drums Contract to be held in escrow until she was paid in full under the contract.

The first interest-only payment of $15,000 to Shukla was due by Drums on February 20, 2010, and all subsequent interest-only payments of $15,000 were to be made on the first day of February thereafter, for a total of $75,000 in interest over the life of the Drums Contract. Thus, Shukla should have been paid a total of $325,000 by February 20, 2014 for her shares of stock in Drums. While denying that any payments are due, defendants indicate that

since plaintiff's complaint was filed on December 18, 2015, the payments which plaintiff alleges were due in February of 2010 and February of 2011 under the Drums Contract are barred by the 4-year statute of limitations applicable to contract actions under Pennsylvania law.[3]

It is undisputed that defendants have not made any payments to either Shukla or plaintiff under the Drums Contract. Defendants have offered to return the Drums stock shares to Shukla but she did not accept them. Defendants also state that after the Drums Contract was executed, the parties verbally modified the contract "so that any and all interest payments under the [Drums Contract] would be postponed until such time as Drums had sufficient cash flow from the business operations to make interest payments." Additionally, defendants maintain that their evidence shows Shukla orally agreed, through Rattan, if she had not been paid from the cash flow of the Drums business pursuant to the contract, she would be paid from the sale proceeds if the business was sold. Defendants also point out that the Drums business was closed from 2001 to 2014 and since it was not operational, it was not making any money. (Doc. 41, ¶'s 17, 19).

The parties agree that there have been no written modifications or amendments to the Drums Contract. The parties dispute whether the Drums Contract was verbally modified after it was executed.

---

[3]The court will address defendants' statute of limitations affirmative defense with respect to both contracts below.

### C. The Assignments of PAM Contract and Drums Contract

On August 24, 2015, Shukla sent an handwritten letter to plaintiff concerning the outstanding balance on the PAM and Drums Contracts, and wrote, in part, that: "Whatever you can pay me from this debt that [defendants] owe me, on whatever terms suit you, I will be in agreement and will be most grateful [ ]. I understand I might have to notarize a few documents so they can be assigned to you in due course." (Doc. 39-8). In response to the letter, plaintiff wired £900,000.00 to Shukla's bank account on September 7, 2015 and the Barclays Bank's payment confirmation referenced that his payment was made for "Truck Stops." (Doc. 39-9).

On September 17, 2015, Shukla sent a handwritten letter to plaintiff stating, in part: "Thank you very much for remitting the amount due to me under the promissory note[s] for the three truck stops in the U.S. [ ]. I am happy to proceed with assigning the debts to you." (Doc. 39-10).

On September 28, 2015, Shukla as "Assignor" executed two documents prepared by her attorney each titled "Deed", (Doc. 22-7, Doc. 22-8), in which plaintiff was the "Assignee." The first Deed pertained to the PAM debt and provided in part:

> The Assignor is owed a debt of US $320,000 from [PAM], for the balance of capital payable under the stock purchase agreement dated January 1, 2009 for her sale to [PAM] of her sixty (60) shares of the capital stock in [PAM] (Debt). The Assignor has agreed to assign the Debt to the Assignee on the terms of this deed with effect from the date of this deed (Effective Date). The Assignor assigns all its rights, title, interest, and benefit in and to the Debt to the Assignee with effect from the Effective Date.

The second Deed pertained to the Drums debt and provided in part:

> The Assignor is owed a debt of US $80,000 from [Drums], for the balance of capital payable under the stock purchase agreement dated January 1, 2009 for her sale to [Drums] of her thirty three and one third (33 1/3) shares of the capital stock in [Drums] (Debt). The Assignor has agreed to assign the Debt to the Assignee on the terms of this deed with effect from the date of this deed (Effective Date). The Assignor assigns all its rights, title interest, and benefit in and to the Debt to the Assignee with effect from the Effective Date.

On December 11, 2015, Shukla executed Amended and Supplemental Assignments in favor of plaintiff "in order to alleviate any confusion that may have arisen due to the proportional application of the March 2015 Payment, and the inadvertent failure to account for unpaid Interest Amounts due under the PAM [Contract] and Drums [Contract]." (Doc. 22, ¶'s 54-55, Doc. 22-10, Doc. 22-11). The Amended Assignments stated:

> [O]n or about September 28, 2015, Assignor assigned all of her rights under the [PAM Contract and Drums Contract] to Assignee. [T]he Assignor desires to confirm that she did grant, bargain, sell, assign, transfer, and set over to Assignee, his successors and assigns, any and all right, title, and interest the Assignor may have in and to [the PAM Contract and Drums Contract].

In her Declaration, (Doc. 22, ¶'s 46-47, 50, 59), Shukla averred as follows: "In executing the Assignments, it was always my intent to transfer any and all rights, title, interest and benefit that I had under the 2009 [Contracts] to Mr. Mikail"; "It was not my intent to retain any interest in, or rights to, the 2009 [Contracts], nor any portion thereof"; "Any and all rights to payment

9

under the 2009 [Contracts] belong to Mr. Mikail alone"; and "In the Amended Assignments, I confirmed that on September 28, 2015, I did grant, bargain, sell, assign, transfer, and set over to Mr. Mikail, any all of my rights, title, interest and benefit in and to the [Contracts]." (*See also* Doc. 23).[4]

### D.    The Alleged Oral Modifications of the Contracts

Defendants allege that there were subsequent oral modifications to both Contracts. Defendants also allege that all of the oral agreements to modify the Contracts were made between Darshan's husband, Amarjit S. Grewal ("Grewal"), and Balvinder S. Rattan ("Rattan"), Shukla's nephew, (*see* Doc. 23). However, defendants do not have any documents relating to the alleged oral agreements between Grewal and Rattan.[5] Defendants state that Grewal was acting on behalf of defendants and Rattan was acting on Shukla's behalf as her representative. In fact, when Manjit Shukla ("Manjit") originally owned the stocks, he gave Rattan power of attorney over his affairs. Later, Rattan held himself out to Grewal as being attorney in fact under a durable power of attorney to handle the affairs of Shukla, who was an elderly woman and did

---

[4]To the extent defendants seek to again challenge the assignments of the Contracts from Shukla to plaintiff, the court will not revisit this issue which it decided in its August 23, 2016  memorandum and order. (Doc. 33, Doc. 34).

[5]The Court notes that Shukla and Rattan are residents and citizens of the United Kingdom and they were not deposed in this case. (Doc. 41 ¶ 64). Plaintiff was deposed, (Doc. 41-10), and Grewal submitted an Affidavit, (Doc. 41-1).

not speak the native Punjabi language spoken by Grewal. Also, Rattan spoke Punjabi and would translate discussions between Grewal and Shukla.

Grewal first became involved with PAM sometime before 2002 when Manjit told him that his health was failing and he could not operate the business. Manjit also told Grewal that he was having financial difficulties at the PAM business and that it was operating in the red. Manjit then asked Grewal to help him operate the PAM truck stop. Eventually, when Manjit's health further declined, Grewal took over the operations of the PAM business and remodeled it to meet the new industry standards. (Doc. 41-2 at 34-35, 86). Additionally, since Grewal's wife Darshan was also president of Drums, Grewal was involved with the operations of this company as well.

After the PAM and Drums Contracts with Shukla were executed in 2009, Grewal avers in his Affidavit that no payments were made to Shukla under the Contracts since Shukla, through Rattan, "annually [ ] agreed to postpone the payments due by the terms of the [Contracts] because the [defendant] Companies did not have the cash flow to make the payments." He further avers that "[t]hese [annual] postponements were made by Mrs. Shukla (and Mr. Rattan) with the understanding that Mrs. Shukla would be paid when the Companies were sold if she had not been paid at that time of such sales from cash flow of the Companies." (Doc. 41-1, ¶15).

Defendants designated Faruk Ozbek ("Ozbek"), their Manager, as their

Rule 30(b)(6) representative who could testify about the facts regarding the alleged annual oral agreements to postpone payments due by the terms of the Contracts. (Doc. 39-17, Doc. 39-18). Ozbek was questioned about his knowledge of the alleged annual oral agreement by Shukla and Rattan to postpone the payments due under the terms of the Contracts since the defendant companies did not have the cash flow to make the payments and, the alleged agreement that the postponements were made with the understanding that Shukla would be paid when the companies were sold if she had not been paid. Ozbek responded that he was aware of the annual postponements and stated:

> I have [heard of the postponements] through Mr. Grewal's conversation that I had with Mr. Grewal about this. He said he had concerns about this stock purchase agreement and companies are not doing good and he tried to market these privately, the PAM Management especially, and every now and then he says like two or three times he approached -- he made a trip to England to approach [Shukla and Rattan] and saying that, "They're not doing so good. We need to discuss what we're going to do," and he's been told by Mr. Rattan, "That's okay. Don't worry about it." That's the only thing I know about the postponements or everything else.

(Doc. 39-2, pp. 31-32, Doc. 41-2).

In terms of the relationship between Grewal and Rattan, Ozbek stated that "they were like family" and "when Rattan comes to USA, he was staying with [Grewal] and they treated each other like family." Shukla also stayed at Grewal's house once when she visited the United States. (Id. at 85).

12

Ozbek was further questioned about the annual postponements of the payments due under the Contracts and he stated:

> My understanding [defendants] were -- ultimately they were going to try to market the truck stop, make it profitable and market it; and after the sale, [defendants] were satisfying the [Notes]. That was my understanding after having conversations with Mr. Grewal. [ ] Mr. Grewal told me every time he approached [Rattan] about Drums and PAM [Rattan] was saying, "Don't worry. It's okay. Don't worry."

(Id. at 42).

Again, Ozbek was asked what he knew about the alleged postponements and he responded: "Mr. Grewal told me on so many occasions that he had a conversation with these people, mostly -- not mostly, only Rattan about this; and every time [Grewal] approaches to [Rattan] saying, 'We're not doing so good. What do we have to do about this,' [Rattan] was saying, 'Don't worry about it.'" Ozbek understood Grewal's comments to mean that Shukla and plaintiff were not demanding the payments due under the Contracts and that Rattan knew Grewal was trying to market the truck stops. (Id. at 38-39). Ozbek also stated that "I believe [Rattan] and [Grewal] agreed on these terms" regarding the postponements of the payments due. (Id. at 49). Ozbek repeated throughout his deposition that Grewal told him that any time he (Grewal) raised a concern about the PAM and Drums stock purchase agreements and shares, "Mr. Rattan was saying, 'Don't worry. It's okay.'" (Id. at 42, 55).

13

Ozbek did not know if Grewal, Shukla and Rattan ever said that they were going to put the oral agreements for postponement in writing. Nor did Ozbek know when the stated individuals reached the oral agreements. Based on Ozbek's understanding of the oral agreements, Grewal advised Shukla and Rattan that the companies were not doing well and Grewal told them that he could not pay them for Shukla's stocks. Grewal also told them that he would try and sell the companies. If Shukla were not paid for Shukla's stocks from the cash flow of the truck stop businesses and the Notes were not satisfied while Grewal was operating them, then Shukla would get paid at the time the companies were sold. In essence, Ozbek indicated that "once PAM [and Drums], the compan[ies], [were] sold, that's when Ms. Shukla would be paid under these [oral] postponements." According to Ozbek, Rattan acquiesced to the oral postponements since "any time [Grewal] raised a concern about these stock purchase agreements and shares, Mr. Rattan [said], 'Don't worry. It's okay.'" Ozbek testified that he "believe[d] Mr. Rattan and Mr. Grewal agreed on these terms"and that Grewal "exclusively dealt with Mr. Rattan and not [ ] Shukla." (Id. at 43-45, 49-50, 55). However, there is no further evidence to show that any agreement was actually made between the parties regarding the alleged postponements of the payments due under the Contracts.

As further proof that Rattan knew PAM and Drums did not have cash

flow to pay Shukla, Ozbek indicated that when the PAM and Drums Contracts were executed in 2009, Drums was not operating and PAM was operating but not making a profit. Specifically, Ozbek indicated that Drums was closed sometime prior to 2009 through sometime in 2014, when it reopened. He also stated that between 2009 and 2014, Drums had to spend a lot of money to address environmental problems, and that it had expenses to obtain a required state highway occupancy permit. Ozbek stated that since Drums reopened in 2014, it has not been profitable. Additionally, Ozbek testified that from 2009 through 2014, PAM was not profitable. (Id. at 25-26, 30, 80-81). However, under the terms of the PAM and Drums Contracts, there was no condition to Shukla's payment in these documents upon PAM or Drums being profitable.

Ozbek also stated that prior to 2015 when this case was initiated, he never received anything in writing from either Shukla or Rattan requesting payment under the PAM and Drums Contracts. However, Ozbek admitted that there was no requirement under either Contract to make a demand before the obligations to make payments became due. (Id. at 84-85, 88). Rather, the Contracts simply provided that the annual payments were due Shukla as specified above.

During discovery, plaintiff sent defendants requests for admissions that asked defendants to admit that the alleged oral modifications regarding the

15

annual postponements regarding any of the payments, i.e., interest-only payments and principal payments, due under the Contracts to Shukla were not supported by consideration. Defendants denied that the postponements were not supported by consideration and, stated "a party's knowing waiver of a provision in a contract does not require consideration." (Doc. 39-15, Doc. 39-16, at ¶'s 7-10).

Plaintiff also asked defendants in an interrogatory to "identify and describe all consideration" that supported the alleged oral modifications to the Contracts, and the only consideration which defendants identified was the "mutual assent by the parties . . . to amend the payment terms of the [Contracts]." (Doc. 39-11).

### E.  Defendants' Additional Material Facts[6]

In November 15 and 18, 2015 e-mails to counsel for plaintiff, Rattan detailed his conversations with Grewal about trying to recover on the debt owed to plaintiff under the Contracts. Rattan stated that Grewal's reasons for not repaying the debt in cash was a "lack of funds" and due to "cash flow" problems as well as an inability to sell another station. Grewal also indicated that he was willing to repay plaintiff by offering stock shares in the Pennsylvania trucks stops in lieu of the debt. Grewal did not deny that the

---

[6]The Court notes that it has mostly incorporated defendants' additional material facts in the main discussion of the facts.

debt to plaintiff was due. Rattan also advised Grewal that he was no longer involved in trying to recover the debt on behalf of Shukla. Rattan acknowledged that he met with Grewal in the summer (i.e., July) of 2015 and that Grewal suggested that Rattan return in September 2015 "to see how the debt situation could be resolved." (Doc. 41-7, Doc. 41-8, (Doc. 43-1, Doc. 43-2).

In an email Rattan sent counsel for plaintiff on February 4, 2016, he again admitted that met Grewal in July of 2015 and that Grewal told him that "they were unable to repay all the debt to Mrs. Shukla." Rattan also acknowledged that Shukla had "dismissed me from my legal obligation as having a power of attorney to act on her behalf. . . ." (Doc. 41-12).

## III.    MOTION FOR SUMMARY JUDGMENT STANDARD

The plaintiff's motion for summary judgment is brought pursuant to the provisions Fed. R. Civ. P. 56. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the

non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

Moreover, the Third Circuit indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" Goode v. Nash, 241 Fed. Appx. 868 (3d Cir. 2007) (citation omitted). A material factual dispute is one that may affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

To prevail on summary judgment, the moving party must affirmatively

identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007); Watson v. Eastman Kodak Co., 235 F.3d 851, 858 (3d Cir. 2000) (the non-movant must establish the existence of each element on which it bears the burden of proof).

## IV. DISCUSSION

Plaintiff contends that there are no genuine issues of material fact with respect to his breach of contract claims against defendants PAM and Drums since it is undisputed that defendants failed to make the annual payments due under the Contracts, and that he is entitled to judgment as a matter of law against both defendants in the principal amount of $1,625,000, together with pre and post-judgment interest. Both parties agree that Pennsylvania law applies to this case.

Because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, and since the Contracts specified that they were governed by Pennsylvania law, (Doc. 22-1, ¶5, Doc. 22-3, ¶5), the court applies Pennsylvania law. *See* Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 563 (3d Cir. 2003). In order to establish a breach of contract claim under Pennsylvania law, plaintiff must demonstrate: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super. 1999) (citation omitted); Gorski v. Smith, 812 A.2d 683, 692 (Pa.Super. 2002); Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).

There is no dispute that plaintiff has established each of the elements regarding his breach of contract claims against defendants. In particular, there is no dispute that Shukla and defendants executed the Contracts and, that

20

she was to receive annual interest payments and one principal payment due in February 2014. By February 20, 2014, Shukla should have been paid a total of $1,300,000 for her PAM shares and a total of $325,000 for her Drums shares. The undisputed evidence also shows that PAM and Drums beached the Contracts by failing to make the required payments due to Shukla, and now due to plaintiff based on the assignment. Further, plaintiff, as Shukla's assignee, has been damaged as a result of the breaches by defendants.

Notwithstanding the undisputed evidence, including the fact that there were no written modifications or written amendments to the Contracts, defendants maintain that genuine issues of material fact exist as to whether Rattan, on behalf of Shukla, and Grewal, on behalf of defendants, orally modified the Contracts. Specifically, defendants contend that Rattan and Grewal orally agreed that all of the annual interest payments due under the Contracts would be postponed until such time as PAM and Drums had sufficient cash flow from the business operations to make interest payments. Additionally, defendants contend their evidence shows Shukla orally agreed, through Rattan, that if she had not been paid from the cash flow of the PAM and Drums businesses under the Contracts, she would be paid from the sale proceeds if the businesses were sold. Also, defendants point out that they offered to return the PAM and Drums stock shares to Shukla pursuant to the Contracts but she did not accept them.

No doubt that defendants did introduce evidence which they contend

21

shows that the Contracts were orally modified. In Hampden Real Estate, 142 Fed.Appx. at 602, the Third Circuit stated that a "written agreement may be modified by a subsequent written or oral agreement and this modification may be shown by writings or by words or by conduct or by all three." (quoting Kersey Mfg. Co. v. Rozic, 207 Pa.Super. 182, 215 A.2d 323 (1965), *rev'd on other grounds* 422 Pa. 564, 222 A.2d 713 (1966)). Further, the parole evidence rule does not apply and does not prevent evidence regarding the intention of the parties to modify the payments terms under the Contracts after the Contracts were executed. Id.

In Hampden Real Estate, 142 Fed.Appx. at 603, the Third Circuit explained as follows:

> It is well-settled law in Pennsylvania that a "written contract which is not for the sale of goods may be modified orally, even when the contract provides that modifications may only be made in writing." Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., Inc., 454 Pa.Super. 188, 685 A.2d 141, 146 (1996). "The modification may be accomplished either by words or conduct," First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co., 824 F.2d 277, 280 (3d Cir. 1987), demonstrating that the parties intended to waive the requirement that amendments be made in writing, Somerset Cmty. Hosp., 685 A.2d at 146. An oral modification of a written contract must be proven by "clear, precise and convincing evidence." Fina v. Fina, 737 A.2d 760, 765 (Pa.Super. 1999).

Since defendants are trying to prove a subsequent oral modification of the Contracts, they have the burden of proving by "clear, precise and convincing evidence" an oral contract modified the prior written Contracts. Somerset Cmty. Hosp., 685 A.2d at 146.

Viewing the evidence in the light most favorable to defendants, the court finds that there is no clear, precise and convincing evidence in the record to raise a genuine issue of material fact as to whether the parties intended to orally modify the Contracts. The court finds that defendants' reliance on the discussions between Rattan and Grewal to show that the parties intended to modify the prior written Contracts and allow for the postponement of the annual payments due under the Contracts is simply not sufficient to meet their burden. Plaintiff correctly points out that defendants could not produce any documents that evidenced the alleged annual oral agreements between the parties to modify the Contracts, and defendants' evidence regarding the discussions between Rattan and Grewal does not satisfy the governing "clear, precise and convincing" evidentiary standard at issue. Additionally, Ozbek did not have any personal knowledge of the alleged oral modifications. Rather, he testified, based on his discussions with Grewal, that he believed Rattan and Grewal agreed on the modified terms. Ozbek testified that every time Grewal raised a concern about the inability of PAM and Drums to make the payments due Shukla under the Contracts since the companies did not have the cash flow to make the payments, Rattan repeatedly told Grewal "Don't worry. It's okay." Ozbek also stated that it was his understanding Rattan and Grewal agreed once PAM and Drums businesses were sold, Shukla would be paid. This is not clear, precise and convincing evidence that the parties orally modified the payment terms of the Contracts.

23

The court finds that defendants' evidence is not enough under the applicable evidentiary standard to justify a jury trial regarding the existence of the alleged oral modifications of the Contracts. *See* Vino 100, LLC v. Smoke on the Water, LLC, 864 F. Supp. 2d 269, 284 (E.D.Pa. 2012)(court granted plaintiff summary judgment on its breach of contract claims since the record was "devoid of any 'clear, precise and convincing' evidence that [the parties] [orally] modified the royalty term of the [contract]"). At best, defendants' evidence merely shows that the parties discussed whether Shukla would postpone the payments due to her under the Contracts but there is no convincing evidence that she ever actually agreed to the postponements or that she was offered and received anything in return for agreeing to them.

As plaintiff explains, "Ozbek's self-serving, double-hearsay testimony that [Grewal] told him that Rattan had purportedly said 'don't worry about it' suggests, at most, that there was a request by Defendants to postpone the payments due under the Contracts, and that Rattan had responded merely by expressing his belief that Shukla would not immediately move to enforce her rights against Defendants." Plaintiff states that Ozbek's testimony does not show by clear and convincing evidence that "a binding, enforceable oral agreement – whereby Shukla purportedly 'would not be paid' until Defendants were sold –was ever reached between the parties." (Doc. 40 at 12). The court concurs.

Ozbek's testimony does in fact contain double-hearsay as he was

repeating what Grewal allegedly told him about the substance of Grewal's conversations with Rattan and what both he (Grewal) and Rattan said in those conversations. As noted above, Shukla and Rattan were not deposed in this case. Grewal was not deposed but his Affidavit was submitted. It is clear that "[t]he court may consider material evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment." Haywood v. Univ. of Pittsburgh, 976 Fed.Supp.2d 606, 625 (W.D.Pa. 2013)(citations omitted). Simply put, Ozbek's testimony is not sufficient "clear, precise and convincing" evidence to show that Rattan and Grewal reached an agreement regarding the modifications and that Shukla agreed to them.

As stated, oral modifications can be accompanied by words or conduct, Hampden Real Estate, 142 Fed.Appx. at 603, and in this case, it was not accompanied by either. In terms of the relevant conduct, Ozbek's understanding was that Shukla did not make demands for the payments due under the Contracts over six years since Rattan knew Grewal was trying to market the truck stop. Ozbek also stated that before the instant law suit was filed, he did not receive any written requests from Shukla or Rattan for the payments due under the Contracts. As such, Ozbek believed that Rattan and Grewal had orally agreed to modify the payment terms of the Contracts. However, Shukla was not required to make any requests or demands for the payments due to her under the Contracts and the evidence does not show clearly and convincingly that she ever orally agreed to postpone the

payments.

Additionally, in his email of February 4, 2016, Rattan admitted that he met Grewal in July of 2015 and that Grewal told him that "they were unable to repay all the debt to Mrs. Shukla." Plaintiff points out that when Rattan met in London with Grewal in July 2015, defendants admitted in their responses to his interrogatories, (Doc. 39-4, Doc. 39-7, ¶'s 12), that Rattan only had preliminary discussions about modifying defendants' payment obligations under the Contracts stating that he would travel to the United States in September 2015 to further discuss the matter. Thus, plaintiff states that no binding oral agreement was reached by the parties either at this time or prior to the assignments of the Contracts to him in September 28, 2015.

The court finds that defendants have failed to present sufficient evidence under the applicable standard and have failed to meet their burden to show that the parties agreed to orally modify the payment terms of the Contracts at any time after the first payments became due. Thus, the court finds that defendants are not entitled to have a jury decide if an oral agreement was actually reached. Indeed, Rattan's plan to meet again with Grewal in September 2015 shows that the parties did not have any agreement to postpone the payments owed Shukla under the Contracts.

"[T]o prove the existence of an oral contract, [defendants] must establish that: (1) both parties manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement were sufficiently

definite to be specifically enforced; and (3) there was mutuality of consideration.'" CPG International LLC v. Shelter Products, Inc., 2017 WL 468224, *5 (M.D.Pa. Feb. 3, 2017) (citations omitted). "Pennsylvania requires courts determining the existence of an oral contract to assess the parties' conduct in light of the surrounding circumstances to determine the existence of an oral contract, including its terms." Id. (citations omitted). "The party asserting the existence of an oral contract must establish its terms are 'clear and precise'" by a preponderance of the evidence. Id. (citations omitted).

Plaintiff contends that all three elements of an oral contract are lacking in this case since the parties did not ever agree to the alleged oral modifications of the Contracts, since the terms of the alleged oral contract were not reasonably certain, i.e., the terms must "provide a basis for determining the existence of a breach and for giving an appropriate remedy," and since the alleged oral modifications were not supported by valid consideration. (Doc. 40)(citation omitted). Plaintiff also states that the alleged oral modifications are not sufficiently definite to be enforced and that defendants have not submitted any evidence concerning the time for performance under the alleged oral modifications.

No doubt that "Pennsylvania law [ ], provides a [party] asserting the existence of a valid oral contract must, in the absence of any writing, establish the oral contract's terms are clear and precise." CPG International LLC, 2017 WL 468224, *5 n. 6 (citation omitted). Also, as stated, the evidentiary burden

27

applicable in this case is that the existence of an oral contract must be established by defendants by "clear and precise" evidence since "the oral contract modifies or changes or cancels a prior written contract." Id. (citing Pellegrene v. Luther, 169 A.2d 298, 300 (Pa. 1961); Hampden Real Estate, 142 Fed.Appx. at 603 (The applicable standard under Pennsylvania law is that an oral modification of a written contract must be proven by "clear, precise and convincing evidence."). Defendants in this case are alleging that there were oral agreements which modified or changed the prior written Contracts regarding when the payments were due to Shukla.

The court finds that defendants have not met their burden by providing enough evidence to establish that the terms of the alleged oral modifications to the Contracts detailed above were sufficiently definite to be specifically enforced. Nor have defendants shown that the alleged oral modifications were supported by valid consideration to Shukla.

In short, the court finds that there is insufficient evidence to show defendants were excused from making the annual payments to Shukla as required by the written terms of the Contracts and there is insufficient evidence to show the existence of the alleged oral modifications. On the contrary, plaintiff has presented evidence showing that a binding, enforceable oral agreement to modify the payment terms of the Contracts was never reached between the parties and that the negotiations between Grewal and Rattan never progressed to the formation of an oral agreement. (Doc. 43 at

8-10).

Plaintiff also states that the alleged oral modifications to the Contracts were not supported by consideration. Plaintiff states that defendants' contention that the parties' mutual assent to orally modify the Contracts constitutes valid consideration for the alleged modifications is without merit since "[t]he prevailing rule in Pennsylvania, ..., is that '[a] contract can be modified with the assent of both contracting parties if the modification is supported by consideration.'" (Doc. 40 at 16)(citing Trombetta, 907 A.2d at 558; Pellegrene, 403 Pa. at 215). As such, plaintiff points out that "under Pennsylvania law, mutual assent and valid consideration are both essential elements of Defendants' oral modification defense, and the failure of proof as to either element is fatal." (Id. at 17)(citations omitted). Thus, plaintiff maintains that the alleged oral modifications were of no effect in this case because the undisputed evidence shows they were not supported by valid consideration.

The court finds no evidence that Shukla received consideration for the alleged oral modifications to the Contracts. Defendants state that under Pennsylvania law, mutual assent constitutes sufficient consideration in this case. They cite to Empire Properties, Inc. v. Equireal, Inc., 674 A.2d 297, 302 (Pa.Super. 1996), in which the Superior Court stated "[c]onsideration is implied from the mutual assent of the parties to the modification." The court did not find any cases that followed the *Empire Properties* case with respect

29

to its holding that the mutual assent of the parties constituted consideration for the oral modification to a written contract. In fact, as plaintiff recognizes, the courts after *Empire Properties* have consistently held that consideration is required for oral modifications. Plaintiff argues that the *Empire Properties* case is an anomaly and point out that the Pennsylvania Supreme Court recently reaffirmed that well-established principal that "[a] contract, either oral or written, may be modified by a subsequent agreement which is supported by legally sufficient consideration, or a substitute therefor, and meets the requirements for contract formation." Shedden v. Anadarko E. & P. Co., L.P., 136 A.3d 485, 490 (Pa. 2016). The court finds the cases cited by plaintiff, (Doc. 43 at 12-13), to be more persuasive which have found that "[a]n agreement may be modified with the assent of both contracting parties if the modification is supported by consideration." Wilcox v. Regester, 417 Pa. 475, 482 (1965); Allstate Ins. Co. v. Tokio Marine & Nichido Fire Ins. Co., 464 F.Supp. 2d 452, 457 (E.D.Pa. 2006)("If either consent or consideration, or both, are absent from an attempt to modify a contract, then the proposed modification is void and the contract continues to operate as originally constructed"); Great Northern Ins. Co. v. ADT Sec. Services, Inc., 517 F.Supp.2d 723, 736 (W.D.Pa. 2007) ("[O]nce a contract has been formed, its terms may be modified as long as the parties mutually agree to the modification and new consideration is provided for the modification.")(citations omitted).

Thus, the court finds no merit to defendants' argument that the mutual assent of the parties was sufficient consideration for the oral modifications.

In the alternative, defendants assert that, even if there was no consideration for the alleged oral modifications, it was not required since Shukla knowingly waived her rights to the annual payments due to her under the Contracts. Defendants state that a party can waive any right she has under a contract and that Shukla waived her right to receive consideration for agreeing to the oral modifications of the Contracts. Plaintiff states that because defendants do not have evidence of an agreement with Shukla in which she waived her rights to the annual payments under the Contracts, they must prove that her alleged waiver of rights under the Contracts was supported by consideration, or a substitute for consideration.

"A waiver is the act of intentionally abandoning a known right, claim or privilege." Creghan v. Procura Management, Inc., 91 F.Supp.3d 631, 643 (E.D.Pa. 2015) (citing Brown v. City of Pittsburgh, 409 Pa. 357, 186 A.2d 399, 401 (1962)). "To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it." Id. (quoting Brown, 186 A.2d at 401). "Once a party has waived a legal right, it cannot undo that waiver and recapture that right." Id. (citation omitted). As such, it was possible for Shukla to have contractually waived her right to annual payments from defendants under the Contracts, but her intent to do so would have to be evident from the record

and there must be evidence of a "clear, equivocal and decisive" act by Shukla to show that she waived her right to the payments. There is simply no such evidence in this case.

Plaintiff correctly indicates that defendants' defense is essentially a promissory estoppel defense. "To make a claim for promissory estoppel, [defendants] must allege: 1) [Rattan and Grewal] made a promise they should have reasonably expected to induce action or forbearance on the part of [Shukla]; 2) [Shukla] actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." MDNet, Inc. v. Pharmacia Corp., 147 Fed.Appx. 239, 244 (3d Cir. 2005)(citation omitted). "Promissory estoppel is applied to enforce a promise not supported by consideration, where there is no binding contract." Id.; *see also* In re Ginko Assoc., L.P., 372 B.R. 229, 239 (E.D.Pa. 2007)("either additional consideration or reliance is required to support a contractual modification.")(citations omitted).

The evidence detailed above shows that Shukla's actions were not clear and unequivocal demonstrating her intentional surrender of her right to annual payments under the Contracts. Plaintiff cites, in part, to his deposition testimony for support, (Doc. 41-10), regarding what Shukla told him about Rattan's meeting with Grewal in July 2015 and how she thought Grewal was going to pay her but instead he only gave the same excuses about the truck stop not making money and why she would have to wait longer to get paid.

Plaintiff has also provided evidence, including evidence that Grewal continued to propose to Rattan in July 2015, two months before the assignments of the Contracts to plaintiff, the return of Shukla's stock shares in PAM and Drums in lieu of making cash payments under the Contracts which would not have been necessary if Shukla had already agreed to the oral modifications. Additionally, as plaintiff states, (Doc. 43 at 8-9), defendants' evidence only shows that "[Grewal] continually made excuses to Rattan regarding Defendants' nonpayment under the Contracts, and sought patience and leniency with regard to the enforcement of Shukla's rights." Further, just because defendants failed to abide by the written payments terms of the Contracts and Shukla did not take any action to enforce the Contracts for six years is not evidence that Shukla waived her right to annual payments under the Contracts. *See* Sellersville Sav. and Loan Ass'n v. Kelly, 29 B.R. 1016, 1019 (E.D.Pa. 1983)(citations omitted); Consolidated Rail Corp. v. Delaware and Hudson Ry. Co., 569 F.Supp. 26, 29 (E.D.Pa. 1983) ("It has long been held in Pennsylvania that proof of (a party's) failure to rigorously enforce its (contractual) rights does not sustain the burden of establishing an implied waiver.") (citations omitted). Rather, the evidence shows that Shukla patiently waited for defendants to make the payments due to her under the Contracts and indulged defendants for a 6-year period since the truck stops were not making money but that her patience ran out after the July 2015 meeting with Grewal in London when Grewal advised her that she would have to wait

longer to receive her payments. (Doc. 39-9, Doc. 41-10). As such, the court finds that defendants have not established that Shukla waived her rights to payment under the Contracts. Nor have defendants established mutual assent to modify the Contracts. Also, as discussed, there was no valid consideration given to Shukla for the alleged oral modifications of the terms of the Contracts.

Based on the evidence discussed above and viewing the evidence in the light most favorable to defendants, the court finds that defendants have not established by "clear, precise and convincing" evidence the existence of a binding, enforceable oral agreement between the parties to modify the payment terms of the written Contracts. Nor does Shukla's indulgence by affording defendants six years to make the payments due to her under the Contracts establish promissory estoppel since there is no evidence that Shukla ever promised defendants that they could continue to postpone the payments due to her. *See* Sellersville, 29 B.R. at 1019. In fact, the evidence shows that defendants failed to make the payments due to Shukla since the truck stops were not making money and not because Shukla failed to enforce her rights under the Contracts or promised to postpone the payments which were due. Thus, the court finds that defendants' affirmative defense based upon a waiver/promissory estoppel fails as a matter of law.

Although defendants did not file a summary judgment motion, they essentially raise arguments in their brief in opposition to plaintiff's motion

which could have been raised in their own dispositive motion. Nonetheless, the court will consider defendants' affirmative defenses since they were asserted in their answer to plaintiff's complaint. (Doc. 37).

First, defendants assert a statute of limitations defense to some of the payments due under the Contracts arguing that the earlier annual payments due are time barred by Pennsylvania's 4-year statute of limitations period for contract claims. *See* 42 Pa.C.S.A. §5525.

"'An action upon a contract, obligation or liability founded in writing' are governed by a four year statute of limitations under Pennsylvania law." Donovan v. Idant Laboratories, 625 F.Supp.2d 256, 265 (E.D.Pa. 2009). In Morgan v. Petroleum Products Equipment Co., 92 A3d 823, 828 (Pa.Super. 2014), the Pennsylvania Superior Court stated:

> [I]t is well-settled that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468, 471 (1983). Thus, once a cause of action has accrued and the prescribed statutory period has run, an injured party is prohibited from bringing his or her cause of action. Id. There are, however, exceptions to this general rule which act to toll the running of the statute. One of these exceptions is the discovery rule, which we have described as a "'judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct.'" Coleman v. Wyeth Pharm., Inc., 6 A.3d 502, 510 (Pa.Super.2010) (citation omitted), appeal denied, 611 Pa. 638, 24 A.3d 361 (2011). The discovery rule in Pennsylvania applies to all causes of action, including breach of contract. *See* Sadtler v. Jackson–Cross Co., 402 Pa.Super. 492, 587 A.2d 727, 731 (1991). [footnotes omitted].

35

In particular, defendants state that plaintiff's claims for interest payments due to her in February of 2010 and 2011 under both Contracts are barred by the statute of limitations under Pennsylvania law. Under the PAM Contract, the first annual interest-only payment of $60,000 was to be made on February 20, 2010, and that all subsequent interest-only payments for $60,000 were to be made on the first day of February thereafter. Under the Drums Contract, the first interest-only payment of $15,000 to Shukla was due by Drums on February 20, 2010, and all subsequent interest-only payments of $15,000 were to be made on the first day of February thereafter. Defendants state that the Contracts were executed on January 1, 2009, and provided that the five interest payments to Shukla were to commence on February 20, 2010 and occur every February for the next four years. Since plaintiff's complaint was filed on December 18, 2015, defendants contend that plaintiff's claims for interest regarding the payments which were due in February of 2010 and 2011 are time barred as they accrued more than four years before plaintiff commenced this action. Thus, defendants assert that the first two interest payments which were due to Shukla under the terms of both Contracts are now time-barred.

Initially, the continuing contract doctrine under Pennsylvania law which provides that statute of limitations for a contract that is continuous does not begin to run until the termination of the contractual relationship between the parties, does not appear to apply since the Contracts provided for fixed

36

annual payment dates to Shukla and a final payment date which would terminate the contractual obligations of the parties. *See* Jodek Charitable Trust, R.A. v. Vertical Net Inc., 412 F.Supp.2d 469, 475 (E.D.Pa. 2006).

Rather, the Periodic-Payment Rule applies which provides,

> The four-year statute of limitations applicable to claims for failure to make payments due under a contract does not start to run until the payment is due. Where a contract calls for periodic or installment payments, each failure to make payments when due constitutes a separate and distinct cause of action. Total Control, Inc. v. Danaher Corp., 359 F.Supp.2d 387, 391 (E.D.Pa. 2005). Consequently, a separate cause of action accrues each time the defendant fails to make timely payment.

Raucci v. Candy & Toy Factory, 145 F.Supp.3d 440, 449 (E.D.Pa. 2015).

Further, neither the discovery rule nor equitable tolling apply in this case since they both "require[] the plaintiff to demonstrate 'that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.'" In re Mushroom Transp. Co., Inc., 382 F.3d 325, 339 (3d Cir. 2004). Plaintiff has made no such showing in this case regarding the annual payments due to her.

Thus, the interest payments which were due Shukla in February of 2010 and 2011 under both Contracts are time barred. Under either the discovery rule or equitable tolling, Shukla clearly knew that she was injured regarding the failure of defendants to make the February 2010 and 2011 interest payments particularly since the court has found that there was no oral modification to the Contracts allowing the postponement of any payments.

That is to say, since the Contracts were not orally modified as defendants maintain, then Shukla should have been reasonably aware she was injured within the applicable 4-year time period due to the failure of defendants to make the February 2010 and 2011 interest payments.

As such, plaintiff's claims for interest regarding the payments which were due to Shukla under both Contracts in February of 2010 and February 2011 are time barred and shall be dismissed.

Secondly, defendants argue that Shukla did not pursue her sole remedy specified in the Contracts which provided that if she was not paid in full pursuant to the terms of the Contracts, the shares of stock in PAM and Drums held in escrow by counsel for defendants would be returned to her. Specifically, both Notes provided that: "As security for [defendants'] obligations to [Shukla], James F. Mangan, Esquire, counsel for the [defendants] shall hold the Shares in escrow until [defendants] ha[ve] paid [Shukla] in full. If [defendants] do[] not pay [Shukla] in full, Mr. Mangan shall deliver the Shares to [Shukla]." (Doc. 22-2, Doc. 22-4). In fact, when the stock shares were offered back to Shukla she would not accept them. Plaintiff also refused to accept the shares of stock which defendants offered to him. Defendants state that under Pennsylvania's "plain language" rule in contract interpretation since the words of the Contracts were clear and unambiguous the intent of the parties was that the stock shares were to be returned to Shukla if she was not paid in full. Defendants contend that the plain language

rule bars plaintiff's claim for money damages. Defendants state that "if it is determined that the stock shares are not to be returned under the plain language of the Agreements, then summary judgment cannot be granted as the contract must be ambiguous and there are material, disputed issues of fact related to the parties' intent." They state that a reasonable jury could find that plaintiff is only entitled to return of the shares if no payments were made under the Contracts since that is what the Contracts provided. (Doc. 42 at 12).

Under Pennsylvania law, "[i]n construing the terms of a contract, a reviewing court must strive to ascertain and give effect to the intent of the parties as found in the written contract." John Spearly Const., Inc. v. Penns Valley Area School Dist.,121 A.3d 593, 601 (Pa.Comwlth. 2015) (citation omitted). The court "presumes the parties carefully select contract language and are aware of the meaning of the terms selected." Id.(citation omitted). "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone."Id.(citations omitted). Additionally, "[t]he proper interpretation of a contract is a question of law to be determined by the court in the first instance." J.W.S. Delavau, Inc. v. Eastern Am. Transp. & Warehousing, Inc., 810 A.2d 672, 681 (Pa.Super.Ct.2002) (citation omitted).

The court finds that the language of the Contracts was not ambiguous and that the plain language did not provide that Shukla's sole remedy for a breach was the return of her shares of stock. Nor did the Contracts' plain language provide that Shukla was not entitled to pursue a claim for money

damages if she was not paid. The Pennsylvania Supreme Court has held that "[w]here the parties do not expressly limit their remedies by contract, no such limitation exists." Liss & Marion, P.C. v. Recordex Acquisition Corp., 603 Pa. 198, 983 A.2d 652, 661 (2009)(citations omitted). The court simply cannot modify the terms of the Contracts to read that Shukla's only remedy was the return of her stock shares particularly since the Contracts did not exclude other remedies. *See* McMullen v. Kutz, 603 Pa. 602, 609, 612, 985 A.2d 769 (2009)("the interpretation of the terms of a contract is a question of law" and "courts are bound by the plain language of a contract as the best evidence of the intent of the parties."); Hanaway v. Parkesburg Group, LP, 132 A.2d 461, 479 (Pa.Super. 2015)("Pennsylvania courts will not imply terms inconsistent with the express terms adopted by the parties to the contract.)(citation omitted). As plaintiff states, (Doc. 43 at 6), "the Contracts permit Plaintiff to pursue any and all remedies available at common law for a breach of contract, including, but not limited to, compensatory damages and interest."

Thus, plaintiff is entitled to pursue his instant action for breach of the Contracts in which he seeks money damages.

## V.  CONCLUSION

Plaintiff's motion for summary judgment, (Doc. 38), is **GRANTED** with respect to his breach of contract claims raised in his complaint, (Doc. 1),

40

against defendants PAM, (Count I), and Drums, (Count II), except with respect to his claims for interest regarding the payments which were due under the Contracts in February of 2010 and February 2011 since these claims are dismissed as time barred. An appropriate order shall be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: April 12, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2437-02.wpd